COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judges Clements and Beales
Argued at Richmond, Virginia


SHEILA MICHELLE STOKES
                                                            OPINION BY
v.        Record No. 1179-05-2                   JUDGE RANDOLPH A. BEALES
                                                            MARCH 13, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NOTTOWAY COUNTY
Thomas V. Warren, Judge

        T. L. Marsh for appellant.

        Benjamin H. Katz, Assistant Attorney General (Robert F.
        McDonnell, Attorney General, on brief), for appellee.


        Sheila Michelle Stokes (appellant) appeals from her conviction of grand larceny under

Code § 18.2-95.[1]  She contends a fatal variance exists between the allegations of the indictment

and the evidence introduced at trial.  Appellant also asserts that the trial court erred in admitting

affidavits of forgery under the business records exception to the hearsay rule and also in

admitting withdrawal slips without a proper foundation.  Finally, she challenges the sufficiency

of the evidence.  For the following reasons, we affirm the conviction.

STANDARD OF REVIEW

        On appeal, we examine the evidence in the light most
        favorable to the Commonwealth.  That principle requires us to
        discard the evidence of the accused in conflict with that of the
        Commonwealth and to regard as true all the credible evidence

---

        [1] Code § 18.2-95 reads, in pertinent part, "Any person who . . . (ii) commits simple
larceny not from the person of another of goods and chattels of the value of $200 or more . . .
shall be guilty of grand larceny . . . ."

favorable to the Commonwealth and all fair inferences that may be drawn therefrom.

Guda v. Commonwealth, 42 Va. App. 453, 455, 592 S.E.2d 748, 749 (2004) (citation omitted).

BACKGROUND

Applying that standard, the evidence shows that appellant made three withdrawals, one on February 18, 2004 for $1,000, one on February 19, 2004 for $1,800, and one on February 20, 2004 for $144, from a savings account at Citizens Bank and Trust. The savings account belonged solely to William Tucker, for whom appellant had previously performed home cleaning services.[2] According to bank records, no one else was authorized to conduct transactions on that account.

A teller from the bank, Crystal Jennings, identified appellant as the individual who presented her with withdrawal slips on February 19th ($1,800) and February 20th ($144). Jennings gave appellant the amount requested on each occasion. These two withdrawal slips bore the signature "Annie Jones." The other withdrawal slip, which was presented on February 18th for $1,000, bore appellant's own signature.

Nearly a week later, Cindy Moore, the vice-president of Citizens Bank and Trust, met with Mr. Tucker and had him fill out "affidavits of forgery." She explained that the bank normally used these forms to investigate fraudulent transactions. Moore recalled that the bank debited Tucker's account on the same days as the transaction but credited the money back a week later after Tucker had completed the affidavits of forgery. Therefore, as she testified, "Citizens Bank and Trust lost the money."

Appellant essentially confessed to the crime. She admitted to police that she picked up the savings book from a table in Tucker's residence. She also told police that she knew she

---

[2] Tucker had passed away by the time of appellant's trial.

shouldn't have taken it and that the book was destroyed after the transactions. Appellant told police that she and her daughter, Annie Jones, had used the money to buy drugs and alcohol. Police, despite confirming that appellant had a daughter, were unable to locate anyone by that name.

Appellant was indicted, pursuant to Code § 18.2-95, for "steal[ing] cash in the amount of $2,944.00 belonging to Citizens Bank & Trust Company." The trial court found appellant guilty of grand larceny. Appellant filed a motion to set aside the verdict, which the trial court subsequently denied. This appeal followed.

ANALYSIS

I. FATAL VARIANCE

Appellant contends that the language "belonging to Citizens Bank & Trust Company" created a fatal variance between the allegations of the indictment and the proof of the crime. As this Court held in Traish v. Commonwealth, 36 Va. App. 114, 549 S.E.2d 5 (2001):

> It is true that a variance between the allegations of an indictment and proof of the crime may be "fatal," and "the offense as charged must be proved." A variance is fatal, however, only when the proof is different from and irrelevant to the crime defined in the indictment and is, therefore, insufficient to prove the commission of the crime charged.

36 Va. App. at 134-35, 549 S.E.2d at 15 (quoting Hawks v. Commonwealth, 228 Va. 244, 247, 321 S.E.2d 650, 651-52 (1984)).

Appellant argues that the Virginia Supreme Court's decision in Gardner v. Commonwealth, 262 Va. 18, 546 S.E.2d 686 (2001), controls this issue and, accordingly, requires this Court to reverse her conviction. In Gardner, the defendant was indicted "for obtaining by false pretenses United States currency of a value greater than $200.00, '*the property of George Gardner*,' with the intent to defraud him." Id. at 19, 546 S.E.2d at 686 (emphasis added). The evidence in that case proved, "Before the bank charged the grandfather's account

- 3 -

with the amount of the withdrawal, it learned that the defendant was not authorized to make the

withdrawal. The grandfather's account 'was not debited with this seven hundred and twenty-five

dollars,' and the bank was 'out the money.'" Id. at 20, 546 S.E.2d at 687.  There, the Court held:

> When the Commonwealth added the phrase "the property of
> George Gardner" to the indictment, it described, limited, and
> qualified what was necessary to be alleged, and the added language
> cannot, therefore, be treated as surplusage. . . .  Here, when the
> Commonwealth alleged in the indictment that the money obtained
> by the defendant was the property of George Gardner but the
> evidence showed the money was the property of the bank, it
> proved a different offense, resulting in a fatal variance.

Id. at 24-25, 546 S.E.2d 689-90.

In Central Nat'l Bank v. First & Merchants Nat'l Bank, 171 Va. 289, 198 S.E. 883

(1938), the Virginia Supreme Court discussed the relationship between a bank and its depositor.

There, the Court held:

> The general rule is conceded that a depositor's funds in a bank are
> unaffected by any unauthorized payment.  If a bank pays out
> money to the holder of a check, upon which the name of its
> depositor is forged, it is simply no payment as between the bank
> and the depositor; the account between the bank and the depositor
> and the legal liability of the bank remain just the same as if the
> pretended payment had not been made.  The pretended payment
> does not diminish the funds of the depositor.

Id. at 303, 198 S.E. at 888.  Therefore, where a fraudulent transaction has occurred, that

transaction does not affect the depositor because the bank did not possess the authority to

disperse the funds from that depositor's account.  As the Supreme Court noted, "The authorities

are in unequivocal and unanimous agreement that a bank, in paying a forged check, must be

considered as making the payment out of its own funds.  In the payment by a bank of a forged

- 4 -

check, it acts at its own peril, and not that of the depositor." Id. at 304, 198 S.E. at 889. Stated another way, it is as if the transaction never occurred as between the depositor and the bank.[3]

The Virginia Supreme Court's holding in Gardner is entirely consistent with the Court's ruling in Central Nat'l Bank. In Gardner, the indictment alleged that the stolen funds belonged to George Gardner. As Central Nat'l Bank makes clear, a bank does not possess the authority to advance funds to a defendant when that defendant is not an authorized signer on the account. Under this principle, the bank in Gardner was responsible for the loss and accepted that responsibility. Therefore, the bank was the victim of the larceny, and as the Court noted, the evidence did not prove that George Gardner was the victim of the crime as alleged in the indictment. Gardner, 262 Va. at 25, 546 S.E.2d at 690.

In Gardner, the indictment incorrectly stated the larceny occurred from George Gardner, whose account was never debited. Here, the indictment states that the larceny was from the bank, whose funds were indeed debited, once the bank determined that Mr. Tucker's account had been improperly debited and then credited the funds back to his account, in accordance with the requirements of Central Nat'l Bank. Appellant argues, then, that Gardner stands for the proposition that once a depositor's account is debited, the funds automatically belong to the depositor for purposes of alleging ownership in an indictment. We disagree with this argument, as it requires this Court to ignore modern banking practice and the debtor/creditor relationship discussed in Central Nat'l Bank. At present, a bank generally would debit the depositor's account when it pays the person presenting the forged check. The bank then must correct the unauthorized withdrawal of funds by debiting its own funds and crediting the depositor's account

---

[3] This analysis assumes that the bank has agreed that the transaction was fraudulent and credited the amount of the transaction back to the depositor's account. If the bank had not credited Mr. Tucker's account, this case would present a significantly different set of facts than is currently before us. Therefore, we decline to comment on the appropriate indictment language where a bank has not debited its own account by the time of the indictment.

to fully make it whole.  That is what happened here.  Appellant's argument would extend the holding in Gardner to an absurd result.

Here, the bank, just as in Gardner, owned the money and was the victim of the larceny, given the bank's obligation under Central Nat'l Bank.  The indictment, therefore, correctly specified that the funds belonged to Citizens Bank and Trust.  Accordingly, the Commonwealth did not prove a separate crime as it did in Gardner, and there was no variance between the language of the indictment and the evidence introduced at trial.

### B.  BUSINESS RECORDS EXCEPTION

Appellant contends that the trial court erred in admitting the affidavits of forgery under the business records exception to the hearsay rule.  Specifically, appellant argues, "[t]here was no evidence of the bank's participation in the creation of those affidavits."

The Virginia Supreme Court recently discussed the business records exception in 1924 Leonard Rd., L.L.C. v. Van Roekel, 272 Va. 543, 554-55, 636 S.E.2d 378, 385 (2006):

> In Virginia, the business records exception to the hearsay rule, also referred to as the "modern shop book rule," permits the admission of verified regular entries of a business provided that such evidence has a direct or circumstantial guarantee of trustworthiness.  We have further explained that the trustworthiness or reliability of such records is guaranteed by the fact that they are regularly prepared and relied on in the conduct of business by the persons or entities for which the records are kept.  Therefore, to be admissible as a business record, a document must be produced by its proper custodian, be a record kept in the ordinary course of business, and be made at the time of an event by a person having a duty to keep a true record of that event.

(Citations omitted).

Here, Citizens Bank and Trust Vice President Cynthia Moore testified that the affidavit of forgery is a bank form that is routinely made and kept by the bank when a depositor complains of an unauthorized withdrawal.  Moore assisted Tucker in filling out these forms for each of the three fraudulent transactions on his account.  Therefore, contrary to appellant's assertion, the

affidavits of forgery were made in the regular course of bank business and were, accordingly, properly admitted under the business records exception to the hearsay rule.

### C. ADMISSION OF THE WITHDRAWAL SLIPS

Appellant contends the trial court erred in admitting copies of the withdrawal slips without a proper foundation. She cites no authority for this assertion. "'Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration.'" Epps v. Commonwealth, 47 Va. App. 687, 718, 626 S.E.2d 912, 926-27 (2006) (*en banc*) (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992)). See Rule 5A:20. Therefore, we decline to address this contention.

### D. SUFFICIENCY OF THE EVIDENCE

"'To sustain a conviction of larceny by false pretenses, the Commonwealth must prove: (a) that the accused intended to defraud; (b) that a fraud actually occurred; (c) that the accused used false pretenses to perpetrate the fraud; and (d) that the false pretenses induced the owner to part with his property.'" Brown v. Commonwealth, 30 Va. App. 243, 251, 516 S.E.2d 678, 682 (1999) (quoting Wynne v. Commonwealth, 18 Va. App. 459, 460, 445 S.E.2d 160, 161 (1994) (*en banc*)).

Here, the evidence, taken in the light most favorable to the Commonwealth, see Guda, 42 Va. App. at 455, 592 S.E.2d at 749, demonstrates that appellant, through her own admission, took a savings withdrawal book from the residence of Mr. Tucker. Appellant on three separate occasions presented forged withdrawal slips from Tucker's savings book, once signed with her own name and twice signed with the name, "Annie Jones," to a teller at Citizens Bank and Trust. On each occasion, appellant received in cash the amount written on the withdrawal slip. Tucker, upon learning of the fraudulent transactions, met with Cynthia Moore, and assisted her in completing affidavits of forgery for the transactions. After filling out these forms, the bank

credited the amount given to appellant back into Tucker's account, taking the funds from the bank's funds. In response to questions from the investigating police officer, appellant admitted that she and her daughter, Annie Jones, had used the money to buy drugs and alcohol. Therefore, we hold that a rational trier of fact could reasonably conclude, based on the above facts, that appellant committed grand larceny in violation of Code § 18.2-95.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court and appellant's conviction for grand larceny.

Affirmed.