UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges McCullough, Russell and Senior Judge Frank
Argued at Norfolk, Virginia

DUANE AUBREY DIGGS

v.       Record No. 0673-14-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE STEPHEN R. McCULLOUGH
MAY 19, 2015

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
David F. Pugh, Judge

Robert P. Stenzhorn (Schempf & Ware, PLLC, on briefs), for
appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Duane Aubrey Diggs challenges his conviction for obtaining money or property by false

pretenses, in violation of Code § 18.2-178.  The indictment alleged that he obtained money or

property from "Hall Ford."  Appellant contends, first, that the indictment identified the wrong party

and, second, that the evidence against him is insufficient as a matter of law.  We reject both

contentions and affirm.

BACKGROUND

On September 27, 2011, appellant brought a 2008 model Lincoln Navigator to Hall Ford

Lincoln for service.  Appellant explained that someone was interested in purchasing the vehicle and

that he wanted it looked over before the purchase took place.  The repair, which was classified as a

warranty repair, necessitated $2,192.84 in parts and $750.80 in labor.  Quality Van Service was the

vehicle's title owner at that time.  Appellant was the only person who spoke with the dealership

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

about the repairs to the vehicle. Appellant paid for the repairs that were not covered by the warranty with his own credit card.

The dealership bears the initial cost of parts and labor for warranty work. After the repairs are done and the customer has picked up the vehicle, the dealership closes the order. One or two days after closing the order, the dealership then bills Ford Motor Company for the parts and labor it provided for performing warranty work. Ford Motor Company then either reimburses the dealer or denies the claim. If Ford denies a dealership's warranty claim, the dealership can pursue a number of avenues for recovery, either from Ford Motor Company or from the customer. In particular, if a warranty claim is denied because the customer provided the dealer with incorrect information, the dealership can pursue legal action against the customer. Ford Motor Company paid for the warranty work here.

As part of its routine process, the dealership checked the odometer on the 2008 Navigator. The odometer read 47,751 miles. The basic factory warranty on the vehicle ended at 50,000 miles or four years. Approximately eleven months before, however, the vehicle's odometer read 105,333, as noted in a service record from a different dealership, Williamsburg Ford.

Special Agent Merrill Craig of the Department of Motor Vehicles opened an investigation in connection with the discrepancy in mileage on appellant's Lincoln Navigator. Appellant voluntarily met with, and gave a statement to, Special Agent Craig and two other agents at the Hampton Department of Motor Vehicles. Appellant stated that "he did change out the odometer and rolled it back" and that he did so "in order to get the warranty work done." According to Special Agent Craig, appellant stated that he physically changed the odometer. When asked if his wife had altered the vehicle's mileage, appellant responded "that he had done it and he would take personal responsibility for any charges that came out of this."

A grand jury indicted appellant for obtaining money or property by false pretenses from "Hall Ford." At the outset of his trial, appellant argued that the case should be dismissed with prejudice because the indictment alleged the wrong victim. The correct victim, he argued, was Ford Motor Company, not the dealership. Appellant later moved to strike the evidence, contending that Ford Motor Company was the "proper victim." The trial court denied the motions. The court found appellant guilty and sentenced him to serve twenty years with seventeen suspended. The court also ordered him to restitute Hall Ford in the amount of $3,398.05.

## ANALYSIS

### I. THERE WAS NO VARIANCE BETWEEN THE INDICTMENT AND THE PROOF.

Appellant argues that there was a "fatal error" in the indictment. Specifically, he contends that the indictment identified the dealership, Hall Ford, as the victim when the actual victim was Ford Motor Company. In his view, there was a fatal divergence between the allegation in the indictment and the proof at trial. He analogizes this case to Gardner v. Commonwealth, 262 Va. 18, 546 S.E.2d 686 (2001).

"Notice to the accused of the offense charged against him is the rockbed requirement which insures the accused a fair and impartial trial on the merits and forms the key to the fatal variance rule." Hairston v. Commonwealth, 2 Va. App. 211, 214, 343 S.E.2d 355, 357 (1986). "A variance occurs when the criminal pleadings differ from the proof at trial." Purvy v. Commonwealth, 59 Va. App. 260, 266, 717 S.E.2d 847, 850 (2011). "[A] variance will be deemed fatal 'only when the proof is different from and irrelevant to the crime defined in the indictment and is, therefore, insufficient to prove the commission of the crime charged.'" Id. at 267, 717 S.E.2d at 850 (quoting Stokes v. Commonwealth, 49 Va. App. 401, 406, 641 S.E.2d 780, 783 (2007)). "In short, the 'offense as charged must be proved.'" Id. (quoting Mitchell v. Commonwealth, 141 Va. 541, 560, 127 S.E. 368, 374 (1925)).

- 3 -

In Gardner, the indictment identified "George Gardner" as the victim of a withdrawal of funds from his bank account. 262 Va. at 19, 546 S.E.2d at 686. The Supreme Court explained that, from a legal standpoint, the actual victim was the bank. Id. at 25, 546 S.E.2d at 690. This failure to identify the correct victim, the Court concluded, constituted a fatal variance. Id. at 23-24, 25, 546 S.E.2d at 689, 690. Gardner did not involve a situation, such as the one here, where the targeted victim suffered an initial loss of property but can potentially be made whole by a third party. The Court explained that the funds were the property of the bank, "until the instant the defendant obtained ownership through her use of the forged withdrawal slip." Id. at 22, 546 S.E.2d at 688.

Quidley v. Commonwealth, 221 Va. 963, 275 S.E.2d 622 (1981), controls the present case. Quidley and an accomplice obtained clothing from a J.C. Penney store. Id. at 964, 275 S.E.2d at 624. They used a forged "Purchase Order" form from the Norfolk Social Service Bureau. Id. at 964-65, 275 S.E.2d at 624. Quidley and her accomplice claimed to purchase the clothing for a person in need, but in fact, the clothing was for their own use. Id. On appeal, Quidley argued that there existed a fatal variance between the indictment and the proof because the Social Service Bureau compensated J.C. Penney for the goods, and therefore, the true victim was the Social Service Bureau or the purported welfare recipient – not J.C. Penney. Id. at 965, 275 S.E.2d at 624. The Supreme Court disagreed, reasoning that "[t]he crime [of obtaining money or property by false pretenses] is complete when the fraud intended is consummated by obtaining the property sought by means of the false representations; and the offense is not purged by ultimate restoration or payment to the victim." Id. at 966, 275 S.E.2d at 625 (citation omitted). The Court unequivocally held that "[u]ltimate financial gain or loss to the victim is immaterial." Id.

Here, as in Quidley, appellant consummated the offense when he "obtain[ed] the property sought by means of the false representations," id., i.e., when he obtained the parts and labor from the dealership under the false pretense that the vehicle was covered by a warranty. Although

- 4 -

appellant argues that <u>Quidley</u> is distinguished because Hall Ford did not own the property, the evidence establishes that, at the time appellant completed the crime, the parts belonged to Hall Ford – not Ford Motor Company. The likelihood, even the fact, of reimbursement does not purge the offense. Furthermore, "[i]t is sufficient if the fraud of the accused has put the victim in such a position that he may eventually suffer loss." <u>Id.</u> As the testimony established, Ford Motor Company may well have refused to pay for this work, which would have left the dealership with no option but to seek legal redress against appellant.

The indictment identified the correct victim: Hall Ford. There is no variance, much less a fatal one, between the indictment and the proof.

## II. THE EVIDENCE ESTABLISHES APPELLANT'S GUILT.

Appellant also contends that the evidence is insufficient to prove his guilt. When considering a challenge to the sufficiency of the evidence presented at trial, "'we presume the judgment of the trial court to be correct.'" <u>Davis v. Commonwealth</u>, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002) (quoting <u>Broom v. Broom</u>, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992)). We reverse only if the trial court's decision is "'plainly wrong or without evidence to support it.'" <u>Id.</u> at 99-100, 570 S.E.2d at 877 (quoting <u>Dodge v. Dodge</u>, 2 Va. App. 238, 242, 343 S.E.2d 363, 365 (1986)). Even if our opinion were to differ, we do not "substitute our judgment for that of the trier of fact." <u>Wactor v. Commonwealth</u>, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." <u>Id.</u>

The elements of obtaining money or property by false pretenses are

> (1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose, that is, the false pretenses to some degree must have induced the owner to part with his property. Moreover, the false pretense must be a representation as to an existing fact or a past event.

Bourgeois v. Commonwealth, 217 Va. 268, 272, 227 S.E.2d 714, 717 (1976) (citations omitted).

Viewed under this standard, the evidence establishes that the vehicle in question had 105,333 miles on the odometer as of November 30, 2010. When appellant presented the vehicle for service at Hall Ford on September 27, 2011, the odometer read 47,751 miles. The basic factory warranty on the vehicle ended at 50,000 miles or four years. The catalytic converter, one of the items repaired, was covered by a separate warranty of up to eight years or 80,000 miles. Appellant admitted that "he did change out the odometer and rolled it back" and that he did so, as he told Special Agent Craig, "in order to get the warranty work done." As a consequence of this deception, Hall Ford provided several thousand dollars in parts and several hundred dollars in labor. This evidence is amply sufficient for the factfinder to conclude that appellant was guilty of the crime.

Appellant raises a number of arguments to challenge the sufficiency of the evidence, the gravamen of which is that he lacked the intent to commit larceny. Appellant notes that he did not own the vehicle in question. He finds it significant that Hall Ford, on its own initiative, sought warranty coverage for the repairs. He also highlights the fact that Ford Motor Company will occasionally cover repairs beyond the warranty out of goodwill. He contends that he did not know the extent of the repairs needed and that Hall Ford suggested certain repairs of which he was unaware. Finally, he attacks the testimony of Special Agent Craig, arguing that it was imprecise, equivocal, uncorroborated, and "self-serving." He faults Special Agent Craig for never "memorializ[ing]" appellant's statement, and he says that he gave the statement under pressure. He

complains that Special Agent Craig did not investigate the possibility that previous repairs to the vehicle may have caused the discrepancy in the mileage.

None of these arguments are availing. It was entirely predictable that Hall Ford would seek to cover the repairs under warranty. Indeed, appellant stated that he changed the odometer to "get the warranty work done." The service technician who spoke with appellant recalled appellant's expectation that the work would be done under warranty.

In addition, it is immaterial which person or entity held the title to the vehicle at the time appellant requested the service. Appellant stated that it was "his vehicle," and although Special Agent Craig identified it as appellant's "father in law's vehicle," appellant obviously was connected with it. He presented it for repairs and, with his own credit card, paid for the items that were not covered.

Any challenges to Special Agent Craig's handling of appellant's statement went to the weight of the evidence – not its admissibility. There is no evidence to support the claim that appellant's statement was made under pressure. Appellant appeared at the DMV office of his own accord. He was told that he was not under arrest and that he was free to go at any time. Appellant's speculation concerning the possibility that Ford would have covered the repairs above and beyond the scope of the warranty does not detract from the fact that the Commonwealth proved the elements of the crime and that Ford Motor Company did not, in fact, cover the repairs beyond the scope of the warranty. Appellant's statement indicates that he knew repairs would be covered by warranty if he reduced the mileage on the vehicle, and he successfully reduced the mileage to avoid paying for these repairs out of pocket. His statement about changing the odometer was corroborated by the repair records from Hall Ford and Williamsburg Ford, which established a discrepancy in the mileage of the vehicle.

Appellant also notes that the digital odometer in the vehicle could not be "rolled back" as with the old mechanical odometers. Appellant's statement, however, was that he had "change[d] out the odometer and rolled it back." Rather than find that appellant mechanically rolled back the mileage on a digital odometer, the factfinder could readily conclude that appellant acknowledged inserting a new odometer, which had the *effect* of rolling back the mileage.[1]

## CONCLUSION

We affirm the judgment of the trial court.

Affirmed.

---

[1] Appellant argues that the trial court improperly awarded restitution to Hall Ford, because Ford Motor Company paid the warranty claim. There is no assignment of error on this point. Accordingly, we do not reach the issue. See Rule 5A:20; Winston v. Commonwealth, 51 Va. App. 74, 82 n.4, 654 S.E.2d 340, 345 n.4 (2007).