■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT MERCADO, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County (Tsoucalas, J.), rendered September 23, 1980, convicting him of robbery in the third degree (two counts) and criminal possession of stolen property in the third degree (two counts), upon a jury verdict, and imposing sentence.

Judgment affirmed.

Defendant stands convicted of two counts of robbery in the third degree and two counts of criminal possession of stolen property in the third degree based upon his participation in the robberies of a fast-food restaurant and a convenience store during the early morning hours of March 10, 1980. Defendant argues that the prosecution failed to produce legally sufficient evidence to sustain his conviction. We disagree and accordingly affirm.

The evidence at trial established that at approximately 3:15 A.M. on March 10, 1980, Jeffrey Dauman, the assistant manager of a Jack-in-the-Box restaurant located in Flushing, Queens, was working on the second floor of the restaurant when he was informed by a fellow employee that there was a robbery in progress downstairs. At that point, codefendant Glen Finnerty, who "was holding onto a bulge above his belt", entered the room, approached Dauman and took his wallet. Finnerty then ordered Dauman to accompany him downstairs and empty the cash register. Dauman complied and placed the

contents of the cash register in a white paper bag which he handed to Finnerty. Once Finnerty left the premises, Dauman called the police and described the perpetrator as a white male, approximately six feet, one inch or six feet, two inches tall, brown hair, wearing a green hooded sweat shirt and blue dungarees.

Shortly thereafter, Officer Dowd responded to the scene and Dauman again gave the officer a detailed description of the perpetrator. As Officer Dowd was transmitting the perpetrator's description over the police radio, he received a call of a robbery in progress at a convenience store located on Main Street and Jewel Avenue. The convenience store was located approximately two or three minutes in driving time away from the Jack-in-the-Box restaurant which had just been robbed.

Upon receipt of the second robbery call, Officer Dowd proceeded immediately to the convenience store and spoke to the manager, Steven Sheinberg. According to Sheinberg, codefendant Finnerty entered the store at approximately 3:15 or 3:20 A.M., holding his hand in his midsection, and announced a stick-up. Shienberg described the perpetrator as about six feet, two inches tall, white, well built, wearing jeans and a green hooded sweat shirt. At Finnerty's direction, Sheinberg emptied the contents of the register, including bills, rolls of coins, and change, into a brown paper bag and turned it over to Finnerty. When the perpetrator left the store, Sheinberg contacted the police and reported the robbery.

Meanwhile, Officer Gusmerotti and his partner, who were on radio patrol at the time of the robberies, received Officer Dowd's call describing the perpetrator of the restaurant robbery. As the officers were canvassing the area, an anonymous tip came over the radio stating that a green Oldsmobile station wagon missing a left rear hubcap had been observed leaving the scene of the robbery at the Jack-in-the-Box restaurant. The driver of the car was described as a hairy male wearing a pea coat. Shortly thereafter, the officers received a radio call of a robbery at the convenience store on Main Street and Jewel Avenue and they proceeded to the location. As the officers turned onto Main Street, they observed a green Oldsmobile station wagon missing a left rear hubcap with two occupants. The driver of the station wagon had a mustache and a beard and was wearing a pea coat. The officers followed the car and ran a check on the license plate which indicated that the car was stolen.

Based on this information, the officers stopped the automo-

bile and ordered the occupants out of the car. The driver, defendant, fit the description given by the anonymous tip of the driver of the car seen leaving the Jack-in-the-Box restaurant and the passenger, codefendant Finnerty, fit the description of the perpetrator of the restaurant robbery. Both men were arrested and frisked. A "wad" of bills and a large amount of change were recovered from codefendant Finnerty's pocket. In addition, Officer Gusmerotti observed a small brown paper bag on the middle of the front seat of the car. Upon retrieving the paper bag, the officer discovered that it contained $27.35 in bills, rolls of coins and change.

Both defendants were placed in the police car and were immediately returned to the scene of the robberies. Dauman and two fellow employees who were present during the robbery identified codefendant Finnerty at the Jack-in-the-Box restaurant. Sheinberg also positively identified Finnerty at the convenience store.

We conclude that the evidence in the record amply establishes defendant's guilt of aiding in the two robberies due to his participation as the wheelman of the getaway car (Penal Law § 20.00). Defendant was spotted minutes after the second robbery driving the stolen car which had been observed earlier leaving the scene of the Jack-in-the-Box robbery and he was in the company of codefendant Finnerty, who was positively identified as the perpetrator of the robberies. Moreover, when the vehicle was stopped the officers retrieved the proceeds of the convenience store robbery in the middle of the front seat of the car, and a "wad" of bills and assorted change were also found on the person of codefendant Finnerty. Based on this evidence, although circumstantial, the jury could reasonably have inferred defendant's complicity in both crimes (see, People v Keitt, 42 NY2d 926; cf. People v Jones, 89 AD2d 876).

Finally, we note that since defendant failed to raise an objection to the legality of the search of the automobile, this issue has not been preserved for appellate review (People v Farinaro, 110 AD2d 653; People v Jones, 81 AD2d 22). Furthermore, defendant lacks standing to challenge the search of the stolen automobile (People v Gittens, 110 AD2d 908; People v Norman, 110 AD2d 859; People v McCloud, 81 AD2d 645, 646). In any event, the officers clearly had probable cause to stop the subject vehicle since they had been informed that the car was reported stolen and had been observed a short time previously leaving the scene of the Jack-in-the-Box restaurant (see, People v Singleton, 41 NY2d 402, 404; People v Pitt, 110

AD2d 723; *People v Rosario,* 94 AD2d 329). The evidence taken from the interior of the vehicle was validly seized as a search incident to an arrest based on probable cause *(see, People v Langen,* 60 NY2d 170, *cert denied* 465 US 1028; *People v Belton,* 55 NY2d 49; *People v Pitt, supra).* Mollen, P. J., Bracken, Brown and Rubin, JJ., concur.