COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Coleman and Bumgardner
Argued at Salem, Virginia


WILLIAM DEAN SHAVER

v.    Record No. 1909-98-3

COMMONWEALTH OF VIRGINIA                          OPINION BY
                                          JUDGE SAM W. COLEMAN III
SUSAN ELAINE BAILEY                            OCTOBER 26, 1999

v.    Record No. 1915-98-3

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                        Ray W. Grubbs, Judge

            Frederick M. Kellerman, Jr. (Long, Long &
            Kellerman, P.C., on brief), for appellant
            William Dean Shaver.

            Beverly M. Davis (Davis, Davis & Davis, on
            brief), for appellant Susan Elaine Bailey.

            Donald E. Jeffrey, III, Assistant Attorney
            General (Mark L. Earley, Attorney General,
            on briefs), for appellee.


     William Dean Shaver and Susan Elaine Bailey were convicted in

a joint bench trial of receiving stolen property, viz., an

all-terrain vehicle (ATV), in violation of Code § 18.2-108.  They

appeal the trial court's refusal to suppress evidence allegedly

obtained in violation of their Fourth Amendment protection against

unreasonable search and seizures.  They also contend the evidence

was insufficient to support their convictions.  Because the

codefendants had no cognizable expectation of privacy at the place the vehicle was located or in the stolen vehicle, we affirm the trial court's denial of the motion to suppress. Additionally, we find the evidence sufficient to support the convictions.

BACKGROUND

Investigator Croy went to the home of William Shaver and Susan Bailey to investigate a forgery complaint that Bailey had lodged. As Croy left the residence, he observed an ATV with a non-factory camouflage paint job parked at the end of the driveway, next to the front porch and about 250 feet from the main road. The ATV was uncovered and visible from the road. Croy was aware of an ongoing investigation into ATV thefts and knew that his office recently recovered a stolen ATV with a similar camouflage paint job.

The following day, Croy returned to the defendants' residence with Investigator Fleet, who was investigating four or five recent ATV thefts in the area. Fleet knew that relatives of Bailey had been arrested in connection with other recent ATV thefts and that one of the recovered ATVs had a paint job similar to the one at the defendants' residence. The investigators intended to speak with the defendants and to examine the ATV to determine whether it was the same make and model as one reported stolen -- a blue Honda with a gray seat and scratch marks on the right rear fender. The officers did not have a search warrant.

The investigators knocked on the front door of the residence but no one answered.  They then inspected the ATV and confirmed that it was the same make and model as the one reported stolen.  Fleet confirmed that the camouflage paint and seat cover were not factory issued.  The investigators raised the seat cover and observed that the original seat was gray.  They also scratched some paint from the ATV with a penknife, which revealed underlying blue paint.  The vehicle identification number had been filed or ground off.

The investigators then called Curtis Dean Fugate, the man who had recently reported stolen a blue Honda ATV with a gray seat, and requested that he come to the defendants' residence.  On arrival, Fugate identified ten characteristics of the ATV that confirmed it to be his stolen ATV.  The officers seized the ATV and released it to Fugate.

Shaver called the sheriff's office later that evening to report the ATV stolen.  Shaver claimed to have purchased the ATV at a flea market for $1,500.  At trial, Bailey corroborated Shaver's account of when they purchased the ATV and that she had given him the money from their joint funds.  The date on which Shaver claimed to have purchased the ATV was, however, five months before the date the ATV was stolen from Fugate.  Shaver could not produce a receipt or identify the person who allegedly had sold the ATV to him.  Fugate estimated the ATV's value to be $3,500.

ANALYSIS

Suppression Motion

On appeal from a motion to suppress evidence, we review the evidence in the light most favorable to the prevailing party.  See McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc).  When reviewing a Fourth Amendment suppression ruling, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them."  Id. at 198, 487 S.E.2d at 261 (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).  However, we consider de novo whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment.  See id.  Here, accepting the facts as found by the trial judge, we hold that Bailey and Shaver had no legitimate expectation of privacy at the location on their property where the ATV was parked or in the ATV.

Two separate searches or intrusions by the officers are at issue.  First, the officers entered upon the defendants' property where they saw and examined the ATV.  Second, the officers searched the ATV by lifting the seat cover and scratching the ATV's surface paint.

Subject to several well established exceptions, the Fourth Amendment prohibits warrantless searches of any place or thing in which a person has a justifiable expectation of privacy.  See

- 4 -

*Mincey v. Arizona*, 437 U.S. 385, 390 (1978).  To determine whether a citizen "enjoys a reasonable expectation of privacy . . . we consider whether he [or she] has exhibited an expectation of privacy in the object and whether that expectation is one that 'society is prepared to recognize as reasonable.'"  *Anderson v. Commonwealth*, 25 Va. App. 565, 576, 490 S.E.2d 274, 279 (1997) (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)), *aff'd*, 256 Va. 580, 507 S.E.2d 339 (1998).

Depending on circumstances, a citizen's reasonable expectation of privacy may extend to his or her residence, personal papers, vehicles, and belongings.  However, where private lands are exposed to observation by members of the public who may legitimately come upon the property, a citizen does not reasonably have an expectation of privacy in areas that the passing public can observe.  See *Katz*, 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").  Here, the defendants had no reasonable expectation of privacy in those areas of their property observable by members of the public who might approach their residence, pass by, or lawfully be upon their property.  Therefore, they had no expectation of privacy in the area where the ATV was parked, which was next to their front porch, near the path of entry to the residence and visible from the road.

- 5 -

See United States v. Ventling, 678 F.2d 63, 66 (8th Cir. 1982) (finding that the defendant did not have a reasonable expectation of privacy in his driveway which was in public view); see generally United States v. McIver, __ F.3d __, __ 1999 WL 587573, at *5 (9th Cir. Aug. 6, 1999) (concluding that affixing an electronic device to the undercarriage of defendant's vehicle which was parked in the defendant's driveway did not violate the Fourth Amendment because the defendant failed to demonstrate that he had a reasonable expectation of privacy in his driveway).

> People commonly have different expectations, whether considered or not, for the access areas of their premises than they do for more secluded areas.  Thus, we do not place things of a private nature on our front porches that we may very well entrust to the seclusion of a backyard, patio or deck.  In the course of urban life, we have come to expect various members of the public to enter upon such a driveway, e.g., brush salesmen, newspaper boys, postmen, Girl Scout cookie sellers, distressed motorists, neighbors, friends.  Any one of them may be reasonably expected to report observations of criminal activity to the police. . . . If one has a reasonable expectation that various members of society may enter the property in their personal or business pursuits, he should find it equally likely that the police will do so.

State v. Corbett, 516 P.2d 487, 490 (Or. Ct. App. 1973)).

In United States v. Smith, 783 F.2d 648 (6th Cir. 1986), the Sixth Circuit concluded that whether a driveway is protected from entry by police officers varies from case to case and is dependant

- 6 -

on whether the driveway is visible and accessible to the public. The court further noted that whether the driveway was within the curtilage of the house was not determinative. See id. at 651. In Smith, a police officer, acting on an informant's tip, drove to the defendant's residence and up the private driveway approximately seventy-five to one hundred yards. See id. at 650. Although there was a wire fence along the highway, the driveway was unobstructed. When the officer reached the house, he observed a marijuana plant growing next to the house. See id. The court held that the defendant had no reasonable expectation of privacy where the plant was growing and further held that the officer did not violate the defendant's Fourth Amendment rights by entering the driveway and proceeding to the residence.

Here, the ATV was parked on a private drive near the front porch of the home where it was visible to the public from the street. The defendants made no attempt to restrict or shield the driveway from public view. The driveway was not enclosed by a fence, shrubbery, or other barrier. See United States v. Humphries, 636 F.2d 1172, 1179 (9th Cir. 1980) (finding that the defendant did not have a reasonable expectation of privacy in his driveway and in the inspection of the car parked thereon because the car was visible from the street and because the driveway was not enclosed by a fence or shrubbery and the officer did not have to move anything to gain access to the driveway). Therefore, when

the officers entered upon the defendants' property to view the ATV, they were on the driveway and at the front of the residence which was visible to the public and those persons approaching the defendants' home. The Fourth Amendment protections did not prohibit the officers from entering the driveway and approaching the house from where they could see and observe the ATV. See Illinois v. Andreas, 463 U.S. 765, 771 (1983) ("If the inspection by police does not intrude upon a legitimate expectation of privacy, there is no 'search' subject to the Warrant Clause.") (citation omitted). Therefore, the presence of the officers in the driveway and their observation of the ATV at that location did not implicate the Fourth Amendment.

The defendants also contend they had an expectation of privacy in the underside of the ATV's seat cushion and in the ATV's undercoat of paint -- items which the defendants clearly did not expose to the public. We find the defendants had no legitimate expectation of privacy in the ATV because they had no lawful claim of ownership in the ATV.

"A general rule has developed, stating that a person's interest in his or her possession of stolen property is not a legitimate expectation of privacy society is willing to recognize as reasonable." Travis v. State, __ So.2d __, __ 1997 WL 187121, at *50-51 (Ala. Crim. App. Apr. 18, 1997) (citing Brown v. United States, 411 U.S. 223, 230 n.4 (1973); United States v. Hensel, 672

- 8 -

F.2d 578 (6th Cir. 1982); United States v. Hargrove, 647 F.2d 411 (4th Cir. 1981); Smith v. Garrett, 586 F.Supp. 517 (N.D.W.Va. 1984); McMillian v. State, 499 A.2d 192 (Md. App. 1985); People v. Mercado, 114 A.D.2d 377 (N.Y.S.2d 1985); Sanborn v. State, 304 S.E.2d 377 (Ga. 1983); State v. Hamm, 348 A.2d 268 (Me. 1975)).

> "[A] thief has no legitimate expectation of privacy in stolen property, as such" and this means that the thief cannot establish standing solely by virtue of his relationship to the stolen property, but would have to establish that the police actually interfered with his person or with a place as to which he had a reasonable expectation of privacy.

5 Wayne R. LaFave, Search and Seizure § 11.3(f), at 203 (3d ed. 1996) (quoting Godfrey v. United States, 408 A.2d 1244, 1246 (D.C. App. 1979), amended by 414 A.2d 214 (1980)); see Rakas v. Illinois, 439 U.S. 128, 143-44 n.12 (1978) (noting a thief, wrongfully present on another's property maintains no legitimate expectation of privacy in that property); United States v. McCambridge, 551 F.2d 865, 870 n.2 (1st Cir. 1977) (noting that the defendant had no standing to challenge the search of the stolen suitcase because he did not have an ownership interest or other right to it); Josephs v. Commonwealth, 10 Va. App. 87, 98, 390 S.E.2d 491, 497 (1990) (en banc) (finding that a passenger riding in a stolen vehicle maintained no expectation of privacy in that vehicle); Commonwealth v. Strickland, 707 A.2d 531, 534 (Pa. Super. 1998) (upholding the search of the vehicle in which the

defendant was driving finding that the defendant could not establish a legally-cognizable expectation of privacy in that which was stolen); Hamm, 348 A.2d at 273 (stating that society is unwilling to recognize as reasonable a thief's expectation of privacy in stolen property); Graham v. State, 421 A.2d 1385, 1389 (Md. App. 1980) (refusing to recognize a thief's expectation of privacy in a stolen backpack and moped).

This case and the foregoing cases are distinguishable from Arizona v. Hicks, 480 U.S. 321 (1987). In Hicks, police officers entered the defendant's home to investigate a recent shooting. See id. at 323. While in the home, an officer noticed two sets of expensive stereo equipment which seemed out of place in the "squalid and otherwise ill-appointed four-room apartment." Id. Suspecting that the equipment was stolen, the officer moved some of the equipment to inspect it. The officer reported his findings to his headquarters and, after learning that the equipment was in fact stolen, seized it. See id. The Supreme Court held that the officer exceeded the scope of the initial, authorized intrusion when he moved the stereo equipment in order to examine it. See id. at 324. The Court found that moving the equipment constituted a "'search' separate and apart from the search for the shooter, victims, and weapons that was the lawful objective of his entry into the apartment." Id. at 324-25. The Court concluded that the officer's actions, which

were unrelated to the authorized intrusion, "exposed to view concealed portions of the apartment [and] its contents" and constituted a new invasion of the defendant's privacy unjustified by the exigent circumstances of the initial authorized entry. Id. at 325. The Court held that absent probable cause to believe the property was stolen, the search was unjustified. See id. at 328. The controlling factor in Hicks was that the stolen property was inside Hicks' apartment where he clearly had an expectation of privacy which the officer violated by moving and searching the personal belongings without probable cause. Here, however, the entry into the defendants' driveway and observation of the ATV did not implicate the Fourth Amendment,[1] and the defendants had no expectation of privacy in the stolen ATV. See Godfrey, 408 A.2d at 1247.

Because the police did not violate the defendants' Fourth Amendment rights by entering upon their real estate, the dispositive issue in the suppression motion was whether the defendants unlawfully possessed the ATV. Because sufficient evidence proved that the defendants knowingly and unlawfully possessed the stolen ATV, the defendants had no legitimate expectation of privacy in the ATV and no basis to challenge, on

---

[1] Had the officers violated defendants' expectation of privacy in order to gain access to the ATV, Hicks would be controlling.

Fourth Amendment grounds, the officers' examination of the undercoat of paint or the underside of the ATV's seat cushion.

Accordingly, the trial court did not err by refusing to suppress the evidence and proceeding to the merits of the case.

### Sufficiency

Viewed in the light most favorable to the Commonwealth, see Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), the evidence was sufficient to sustain the defendants' convictions for receiving stolen property.

To convict a defendant under Code § 18.2-108, the Commonwealth must prove that property "was (1) previously stolen by another, and (2) received by defendant, (3) with knowledge of the theft, and (4) a dishonest intent." Bynum v. Commonwealth, 23 Va. App. 412, 419, 477 S.E.2d 750, 754 (1996). Guilty knowledge "is sufficiently shown if the circumstances proven are such as must have made or caused the recipient of stolen goods to believe they were stolen." Reaves v. Commonwealth, 192 Va. 443, 451, 65 S.E.2d 559, 564 (1951). The fact that a defendant paid a patently low price for property is a circumstance from which a trier of fact may infer guilty knowledge. See Wilson v. Commonwealth, 220 Va. 26, 35, 255 S.E.2d 464, 469-70 (1979).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of

guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). However, "[t]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

The evidence proved that Fugate's ATV, which was recently stolen, was recovered from the defendants' property. The defendants admitted they possessed the ATV and claimed to have purchased it. Fugate identified ten characteristics of the ATV that confirmed that it was his ATV. The Commonwealth's evidence supported the inference that the defendants knew the ATV was stolen property. The date on which the defendants claimed to have purchased the ATV preceded the date by approximately five months that the ATV was stolen from Fugate. This fact give rise to a permissible inference that the defendants sought to conceal facts about their acquisition of the ATV. The defendants, who claimed to have paid $1,500 of on-hand cash for an ATV worth approximately $3,500, were unable to produce a receipt or identify the seller. The trial court accepted the Commonwealth's evidence while rejecting the defendants' testimony, and we cannot hold that this decision was plainly wrong. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it

- 13 -

is presented." <u>Sandoval v. Commonwealth</u>, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citations omitted).  Accordingly, the trial court did not err by denying the defendants' motion to strike the evidence.

Therefore, we affirm the defendants' convictions.

<u>Affirmed.</u>