COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Ortiz and Causey
Argued at Lexington, Virginia


SHERI LYNN HEISEL-UDELL

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 0176-22-3          JUDGE DORIS HENDERSON CAUSEY
                                                    JUNE 6, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Christopher B. Russell, Judge

Robert E. Dean (Rob Dean Law, on brief), for appellant.

John W. Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General; Robin M. Nagel, Assistant Attorney General, on
brief), for appellee.


Sheri Lynn Heisel-Udell challenges her conviction for receiving stolen property in

violation of Code § 18.2-108.  She asserts that the trial court abused its discretion in admitting

certain exhibits into evidence under the business records exception to the hearsay rule and that

the evidence failed to prove she knew the money at issue was stolen.  We hold that any error in

admitting the exhibits was harmless and the evidence was sufficient to sustain the conviction.

Thus, we affirm the trial court's judgment.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

BACKGROUND[1]

Zoe Cozak, associate treasurer and controller for Washington & Lee University, received an email from an employee in the accounts payable department asking that she make an ACH payment[2] in the amount of $51,000 to one of the university's vendors, EverFi. The email was accompanied by an invoice and a direct deposit authorization form listing the banking information for the vendor. Cozak approved the payment. She received confirmation that the payment had been made to the account on the direct deposit form. Cozak subsequently learned that the invoice and the direct deposit authorization form were fraudulent. She notified the university's IT cyber security group, which reported the matter to the Lexington Police Department.

Lexington Police Detective Nathan Kesterson investigated the case. Using the bank routing number from the direct deposit authorization form, Kesterson learned that the payment was deposited into an account at J.P. Morgan Chase Bank in California. He then secured a search warrant for the bank records associated with the account number and learned that the funds were deposited into an account owned by Richard Heisel, Heisel-Udell's father. Heisel-Udell was listed as the power-of-attorney on the account.

Kesterson first contacted Heisel-Udell on June 15, 2020. When he asked her about the $51,000 deposit to her father's account, she told him that her mother was in a relationship with people online whom Heisel-Udell believed were "scamming" her mother out of money. Heisel-Udell admitted that she was aware of the $51,000 deposit and explained that she

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)).

[2] An ACH payment is an electronic bank-to-bank payment.

transferred the funds out of her father's account into another account to prevent her mother from taking the money, but her mother accessed that account as well. Heisel-Udell told the detective that she used approximately $20,000 "to pay bills and accounts that had become delinquent [because] her mother g[ave] money to the initial suspect of the actual theft from W&L." At the time of Kesterson's first conversation with Heisel-Udell, she claimed that there was only about $1,000 left in the account, because her mother had sent the money to "the scammer." She also told Kesterson that she believed the account "was on hold through Chase Bank . . . because of suspected fraud."

Kesterson then issued a subpoena for Heisel-Udell's bank records and discovered that Heisel-Udell had transferred the entire $51,000 from her father's account directly into her own account on the same day that the funds were deposited in her father's account. On August 12, 2020, Kesterson contacted Heisel-Udell to discuss the findings of his investigation with her. A portion of their recorded conversation was played in court and transcribed on the record. Kesterson asked Heisel-Udell to explain again about the money she transferred from her father's account. Heisel-Udell replied that money came into the account "all the time . . . like once a week or something like that." She said that her mother "just kept on taking off the money." Heisel-Udell told her mother that she had applied for "the [SBA] thing . . . You know, to help your business out and stuff like that." Then, "some money came in" that "was the exact amount" she had requested from the SBA so she "just assumed" the money was from the SBA.[3]

Detective Kesterson asked Heisel-Udell about her prior statement, in which she stated that she transferred the funds to another account under her father's name and that her mother withdrew the funds and sent them to the "scammer." Heisel-Udell responded, "Right." She added that her mother had said that one of her friends told her "that was her money." Detective

---

[3] Heisel-Udell was referring to COVID business relief funds.

Kesterson asked Heisel-Udell how much money her mother had obtained, and Heisel-Udell responded "at least twenty-five."

Detective Kesterson told Heisel-Udell his investigation showed that $51,000 had been deposited into her father's account on May 15, 2020, and the money was transferred into an account under Heisel-Udell's name the same day. He then said that on May 18, 2020, there was a $10,000 payment via Zelle to "The Hay Guy," a second payment of $10,000 to "The Hay Guy," a Capital One payment of $5,750.06, another Capital One Payment for $4,498.21, a $2,356.30 payment to a "Barkley card," and a Target card payment of $2,053.75. Kesterson further said that a separate online transfer of $6,000 was deposited into Heisel-Udell's account on May 18, 2020, and $8,900 was paid to "BH web payment" on May 26, 2020. On June 4, 2020, Heisel-Udell was issued a cashier's check for $14,251 and the account was closed. Heisel-Udell said, "that sounds all correct." Heisel-Udell said, "those were my dad's bills," and explained that she also reimbursed herself $10,000 for buying her father a truck.

Sometime after first talking with the detective in June but before the recorded telephone conversation in August, Heisel-Udell sent Kesterson a copy of a text message exchange between Heisel-Udell and her mother. In the undated messages, Heisel-Udell accused her mother of "laundering money" with her father's account. Heisel-Udell wrote "You are not in reality. You really believe these guys are sending you [their] money. They sent you someone else's money."

After the Commonwealth rested its case, Heisel-Udell made a motion to strike, arguing that the evidence failed to prove that she knew the funds were stolen. The trial court denied the motion to strike.

Heisel-Udell testified that when the money appeared in her father's account, she asked him if he knew where it was coming from, and he told her it came from an SBA loan. Heisel-Udell claimed that she had never heard of Washington & Lee and she moved the money

out of her father's account to pay off his bills.[4] Heisel-Udell stated that her mother had dementia and that she had been taking Heisel-Udell's father's "legitimate money, his money from work and sending it off." She denied knowing that the $51,000 had come from the university or that the deposit was fraudulent. On cross-examination, Heisel-Udell asserted that she did not close her account, but that the bank closed it because it suspected fraudulent activity.

Heisel-Udell's sister Deborah testified that when the money appeared in her father's account, Heisel-Udell asked her where it came from, and Deborah told Heisel-Udell it must have come from the SBA loan. Deborah said, "we could not deduce anything else that that money could have come from."

After the defense rested, Heisel-Udell again moved to strike the evidence arguing that the evidence was insufficient to prove she knew the money was stolen. The trial court denied the motion to strike and convicted Heisel-Udell of receiving stolen property. The court sentenced Heisel-Udell to five years of incarceration but suspended the sentence, imposed five years of probation, and ordered restitution. This appeal follows.

ANALYSIS

Heisel-Udell contends that the trial court erred in finding the evidence sufficient to prove she was aware that the funds were stolen. She also asserts that the trial court abused its discretion in admitting the invoice, the direct deposit authorization form, and the ACH banking detail into evidence at trial. For the following reasons, we affirm the conviction.

I. Sufficiency of the Evidence

A. Standard of Review

"When considering the sufficiency of the evidence, an appellate court views the evidence 'in the light most favorable to the Commonwealth, the prevailing party below.'" *Williams v.*

---

[4] Heisel-Udell's father died while the investigation was pending.

- 5 -

*Commonwealth*, 71 Va. App. 462, 483 (2020) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 629 (2009)). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Bowman v. Commonwealth*, 290 Va. 492, 494 (2015) (quoting *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "These principles recognize that an appellate court is 'not permitted to reweigh the evidence,' because appellate courts have no authority 'to preside *de novo* over a second trial[.]'" *Clanton v. Commonwealth*, 53 Va. App. 561, 566 (2009) (en banc) (first quoting *Nusbaum v. Berlin*, 273 Va. 385, 408 (2007); and then quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 11 (2004)). We will affirm the trial court unless its judgment is "plainly wrong or without evidence to support it." *Brown v. Commonwealth*, 68 Va. App. 746, 786-87 (2018) (quoting *Gerald v. Commonwealth*, 68 Va. App. 167, 172 (2017)).

B. The evidence proved that the appellant knew the $51,000 was stolen property when the money was deposited into her father's bank account and she used it to pay personal bills.

"If any person buys or receives from another person, or aids in concealing, any stolen goods or other thing, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof, and may be proceeded against, although the principal offender is not convicted." Code § 18.2-108(A). "To convict a defendant under Code § 18.2-108, the Commonwealth must prove that property 'was (1) previously stolen by another, and (2) received by defendant, (3) with

- 6 -

knowledge of the theft, and (4) a dishonest intent.'" *Shaver v. Commonwealth*, 30 Va. App. 789, 800 (1999) (quoting *Bynum v. Commonwealth*, 23 Va. App. 412, 419 (1996)). Heisel-Udell does not contest that the $51,000 was stolen by someone and that she received it. Thus, the only challenged element before this Court is whether Heisel-Udell knew the funds were stolen when she received them.[5]

"Guilty knowledge . . . [a]bsent proof of an admission against interest, . . . necessarily must be shown by circumstantial evidence." *Snow v. Commonwealth*, 33 Va. App. 766, 775 (2000) (alterations in original) (quoting *Lewis v. Commonwealth*, 225 Va. 497, 503 (1983)). Guilty knowledge "is sufficiently shown if the circumstances proven are such as must have made or caused the recipient of stolen goods to believe they were stolen." *Shaver*, 30 Va. App. at 800-01 (quoting *Reaves v. Commonwealth*, 192 Va. 443, 451 (1951)).

"It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). In other words, "the Commonwealth has the burden of proof beyond a reasonable doubt." *Case v. Commonwealth*, 63 Va. App. 14, 23 (2014) (quoting *Taylor v. Commonwealth*, 61 Va. App. 13, 30 (2012)). To that end, "[c]ircumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27

---

[5] In her opening brief, she asserts for the first time that the evidence failed to prove a dishonest intent. She did not make that specific objection in the trial court, and her assignment of error challenged only the Commonwealth's alleged failure "to prove she knew the property she received had been stolen." Thus, her contention that the evidence failed to prove her "dishonest intent" is waived under Rules 5A:18 and 5A:20.

(2019) (second alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Here, the evidence proved that Heisel-Udell knew her mother was involved in an internet scheme with persons who sent her mother money, and in turn, her mother took money from the account and sent it to the online scammers. Heisel-Udell observed that money to the account was "coming in all the time," at least once a week. She confronted her mother via text messages, accusing her of money laundering and stating that the scammers were sending "someone else's money." Yet, when the $51,000 deposit appeared in her father's bank account, Heisel-Udell and her sister both testified that they believed the money came from an SBA loan because they "could not deduce anything else that [it] could have come from."[6] It seems incredulous that even though Heisel-Udell knew scammers were using her father's account for "laundering money," she did not suspect that the $51,000 deposit came from an illegal source.

A reasonable fact finder could infer that Heisel-Udell seized the opportunity the stolen money provided to use it to her own advantage. The $51,000 deposit was made to Heisel-Udell's father's account on May 15, 2020, and she moved the entire deposit into her own account on the same day. On May 18, 2020, she used $34,658.26 to pay personal bills and reimburse herself for money she said she had loaned her father for a truck. On June 4, 2020, she obtained a cashier's check in the amount of $14,251, before the account was closed for suspected fraudulent activity. Heisel-Udell told conflicting stories about what happened to the money, first asserting that she used only $20,000 of it and that her mother sent the rest to the scammers, and then admitting that she transferred the entire $51,000 to her own account and used the money to pay bills. She claimed that she paid her father's bills, but the cashier's check was issued directly

---

[6] Heisel-Udell told Kesterson that she had applied for the SBA loan but testified her father had applied for the loan.

to her when the account was closed.  Any rational fact finder could conclude that Heisel-Udell knew the funds were stolen when she received them and converted them to her own use.  *See Covil v. Commonwealth*, 268 Va. 692, 696 (2004) ("A[n] . . . evasive account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge.").

Further, the trial court was not required to accept Heisel-Udell's assertion that she thought the $51,000 deposit was the proceeds from an SBA loan.  "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt."  *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).  "[E]ven if [the] defendant's story was not *inherently* incredible, the trier of fact need not have believed the explanation."  *Montgomery v. Commonwealth*, 221 Va. 188, 190 (1980).

In finding Heisel-Udell guilty, the trial court rejected her version of events.  An appellate court may only disturb the trial court's credibility determination if the evidence is "inherently incredible, or so contrary to human experience as to render it unworthy of belief."  *Kelley*, 69 Va. App. at 626 (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)).  The evidence here is not "unworthy of belief."  Rather, the evidence sufficiently proved that Heisel-Udell received the $51,000 deposit and converted it to her personal use, knowing the funds were stolen.

## II.  Admission of Commonwealth's Exhibits 1, 2, and 3

At trial, during Zoe Cozak's testimony, the Commonwealth moved to admit the invoice (Exhibit 1), the direct deposit form (Exhibit 3), and a copy of the university's ACH "banking detail" that confirmed the $51,000 payment (Exhibit 2).[7]  Heisel-Udell objected, arguing that the

---

[7] Only "Transaction Detail 5" shown in Exhibit 2 pertains to this case.

documents constituted inadmissible hearsay and lacked an adequate foundation to be considered business records. After further inquiry, the trial court entered the documents into evidence under the business records exception to the hearsay rule.

## A. Standard of Review

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006) (quoting *Breeden v. Commonwealth*, 43 Va. App. 169, 184 (2004)). A trial court "abuses its discretion when it makes an error of law." *Slusser v. Commonwealth*, 74 Va. App. 761, 774 (2022) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)). "A reviewing court can conclude that an abuse of discretion has occurred only in cases in which reasonable jurists could not differ about the correct result." *Pulley v. Commonwealth*, 74 Va. App. 104, 118 (2021) (quoting *Atkins v. Commonwealth*, 68 Va. App. 1, 7 (2017)).

## B. Business Records Exception to Hearsay Rule

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801. Hearsay evidence is not admissible "unless it falls within one of the recognized exceptions to the rule against hearsay." *Pulley*, 74 Va. App. at 118 (quoting *Jones v. Commonwealth*, 71 Va. App. 597, 604 (2020)). Business records made and kept in the ordinary course of business are one such exception to the rule. *See* Va. R. Evid. 2:803(6).

> The Supreme Court has explained the business records exception to the hearsay rule as follows:
>
> "In Virginia, the business records exception to the hearsay rule, also referred to as the 'modern shop book rule,' permits the admission of verified regular entries of a business provided that such evidence has a direct or circumstantial guarantee of trustworthiness. We have further explained that the

- 10 -

> trustworthiness or reliability of such records is guaranteed by the fact that they are regularly prepared and relied on in the conduct of business by the persons or entities for which the records are kept. Therefore, to be admissible as a business record, a document must be produced by its proper custodian, be a record kept in the ordinary course of business, and be made at the time of an event by a person having a duty to keep a true record of that event."

*Anaman v. Commonwealth*, 64 Va. App. 379, 389 (2015) (quoting *Stokes v. Commonwealth*, 49 Va. App. 401, 409 (2007)).

Heisel-Udell argues that Cozak's testimony was not sufficient to establish that Exhibits 1, 2 and 3 were business records because Cozak was not "a 'person with knowledge' that the records are made and kept in the ordinary course of business," and testimony from "a person from Chase Bank" was required. However, there was no evidence that the three challenged documents had been generated by Chase Bank or maintained by the bank in conducting its business.[8] Rather, the evidence showed that the documents were the records of Washington and Lee University. Cozak, the associate treasurer and controller for the university, testified that she approved a payment of $51,000 to EverFi after receiving the invoice (Exhibit 1) and the direct deposit form containing the bank account number into which the funds were deposited (Exhibit 3) from an employee in the university's accounts payable department. Cozak also testified that the ACH banking detail report (Exhibit 2) was confirmation that the university had made the payment to EverFi on May 15, 2020. She stated that the ACH report was made in the ordinary course of business at or near the time of the transaction, once the payment "cleared."

Arguably, Cozak's testimony sufficiently established that Exhibits 1, 2, and 3 were business records. *See* Va. R. Evid. 2:803(6)(A) (defining business record); *see also Anaman*, 64 Va. App. at 390 (holding that a form used by a bank when deciding to credit a cardholder's

---

[8] The trial court sustained Heisel-Udell's objection to admitting information received from Chase Bank regarding her father's account because Virginia Rule of Evidence 2:902(6)(b) had not been complied with. Exhibits 1, 2, and 3 were not documents from Chase Bank.

- 11 -

account for unauthorized purchases on the customer's credit card account was a business record). But because an appellate court must decide cases "on the best and narrowest grounds available," *Commonwealth v. Swann*, 290 Va. 194, 196 (2015), we assume without deciding that the trial court abused its discretion in admitting the documents under the business records exception and hold that the error was clearly harmless.

## C.  Harmless Error

Evidentiary errors are analyzed under the standard for non-constitutional harmless error. *Salahuddin v. Commonwealth*, 67 Va. App. 190, 211-12, (2017).  The standard for non-constitutional error is established in Code § 8.01-678, which provides, in pertinent part:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any other error committed on the trial.

"Non-constitutional error is harmless if other evidence of guilt is so 'overwhelming' and the error so insignificant by comparison that we can conclude the error 'failed to have any "substantial influence" on the verdict.'"  *Dandridge v. Commonwealth*, 72 Va. App. 669, 685 (2021) (quoting *Lienau v. Commonwealth*, 69 Va. App. 254, 270 (2018)).

In this case, Cozak's testimony, by itself, established that after she approved a vendor payment for $51,000, a deposit in that amount was made to a bank account allegedly connected to the vendor.  Detective Kesterson testified that he traced the deposit to a California bank account owned by Heisel-Udell's father.  Heisel-Udell was listed as power-of-attorney on the account.  Heisel-Udell confirmed that Washington & Lee made the deposit, and she admitted immediately transferring the funds from her father's account to her own account.  She also admitting using the funds to pay bills and receiving a final cash payment of $14,251 before her account was closed for suspected fraud.  The challenged exhibits were merely cumulative

evidence that $51,000 was stolen from the university and received by Heisel-Udell. Thus, any error in admitting the documents into evidence was harmless because it did not substantially influence the verdict. In finding Heisel-Udell guilty, the trial court noted that there were "gaps" in tracking the money to her, but it was "abundantly clear" from the recorded telephone conversation that money wrongly sent from the university went to a bank account to which Heisel-Udell had access and that she used the money. Heisel-Udell did not question Kesterson's summary of the payments she made from her father's bank account, agreeing "that sounds all correct." Because the record contains "overwhelming" evidence of guilt, the assumed error was harmless. *See Commonwealth v. Kilpatrick*, __ Va. __, __ (Aug. 4, 2022).

### CONCLUSION

For the foregoing reasons, we hold that the evidence sufficiently proved that Heisel-Udell knew the funds were stolen when she transferred them into her own account and used them for her own purposes. We also hold that, assuming without deciding that it was error to admit the invoice, the direct deposit authorization form, and the ACH banking detail into evidence, such admission of them was harmless. Thus, we affirm Heisel-Udell's conviction for receiving stolen property.

*Affirmed.*