COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Friedman and Frucci
Argued at Norfolk, Virginia

JACOB JOHN PIPKIN

                                         MEMORANDUM OPINION[*] BY
v.      Record No. 0277-24-1          JUDGE STEVEN C. FRUCCI
                                         MARCH 25, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
Jeffrey W. Shaw, Judge

Benjamin M. Mason (Mason, Mason, Walker & Hedrick, P.C., on
brief), for appellant.

Ryan Beehler, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


After a bench trial, the Circuit Court of Gloucester County convicted Jacob John Pipkin

of knowingly buying a stolen firearm. The circuit court sentenced him to two years of

incarceration, all suspended. On appeal, Pipkin challenges the sufficiency of the evidence to

sustain his conviction. Specifically, Pipkin argues that the evidence presented to the circuit court

could only lead to speculation that he knew the firearm was stolen. Finding no error, we affirm

the circuit court's judgment.

BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth."

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v.*

*Hudson*, 265 Va. 505, 514 (2003)). "That principle requires us to 'discard the evidence of the

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

In November 2021, Warren Demery's Smith and Wesson nine-millimeter handgun was stolen from his vehicle in Hampton.[1] Demery immediately reported the theft to the police. In January 2022, Austin Caps sold that firearm to Dominick Turner for approximately $450. Shortly after purchasing the firearm, Turner went to Pipkin's residence in Gloucester County to "hang out." Pipkin—who Turner met through mutual friends—repeatedly pressed Turner to sell him the firearm. Pipkin told Turner—who was under the age of 21—that the firearm "was possibly illegal and stolen." Pipkin also stated that "he could hide it and get away with it."

Turner did not sell the firearm to Pipkin that day. But after Pipkin continued to tell Turner that the firearm "was possibly illegal and stolen," Turner eventually agreed to sell it to him. Pipkin and his friend, Gabriel Harper, met Turner at an apartment complex in York County, and Pipkin paid Turner approximately $100 and 15-20 grams of marijuana for the firearm.

In February 2023, law enforcement officers executed an unrelated search warrant at a residence in Gloucester County. They located a firearm on an upstairs bed; a search of the serial number revealed it to be Demery's stolen Smith and Wesson handgun. The officers found shirts bearing Pipkin's name on the same bed as the firearm. Pipkin later told the officers that he purchased the firearm from Turner for "$120 and some" marijuana. The officers also showed Pipkin two photographs depicting him holding a handgun, and Pipkin confirmed that the firearm in the pictures was the same one he purchased from Turner.

At trial, Demery identified the firearm seized during the February 2023 search as the one that was stolen from him in November 2021. Turner identified the same firearm as the one he purchased from Caps and sold to Pipkin. Turner testified that he kept the firearm only for "a few

---

[1] The record does not reflect who stole the firearm from Demery.

days" after purchasing it "because [he] was soon to realize it was stolen." He also believed that it was "illegal for [him] to have" the firearm because he was "not age 21." Thus, he "just wanted to get rid of it."

Turner then "went to people to try to get rid of" the firearm. He decided to sell it to Pipkin because "he was wanting it and . . . kept bribing" Turner.[2] Pipkin told Turner that "he could hide it and get away with it." Pipkin stated that he "would need to hide it" because it "was possibly illegal or stolen." Turner testified that they completed the sale a "few days to maybe a week and a half" after Pipkin first asked to buy it.

At the close of the Commonwealth's case, Pipkin moved to strike the evidence, arguing that the Commonwealth failed to prove that he knew the firearm was stolen. The circuit court denied the motion. Pipkin recalled Turner to the stand. Turner testified that, during the sale, he and Pipkin did not "have any conversations" regarding whether the firearm was "clean" or "stolen." Turner clarified that Pipkin previously "mentioned" that the firearm was stolen and that Turner was "not 21." Those comments were "kind of what got [Turner] thinking [he] should sell" the firearm to Pipkin. Turner did not "know how [Pipkin] would have known it was a stolen firearm."

Harper testified that he went with Pipkin when he purchased the firearm from Turner. According to Harper, he asked Turner "is this gun registered or is it stolen?" Turner replied to Harper that it was "clean and registered."

After the close of all the evidence, Pipkin reiterated his contention that the Commonwealth failed to prove beyond a reasonable doubt that he knew the firearm he purchased from Turner was stolen. The Commonwealth argued that Pipkin's repeated statements to Turner that the firearm was stolen and that Pipkin could "hide it" were sufficient to establish Pipkin's guilt.

---

[2] Turner did not further explain what he meant by "bribing."

The circuit court found that the Commonwealth proved beyond a reasonable doubt that Pipkin purchased the firearm "knowing that it was stolen." The circuit court emphasized Pipkin's statements "about it being stolen" and wanting to "hide it or get away with it." Pipkin also "kept hounding [Turner] about" purchasing the firearm. The circuit court also stated that Pipkin's age made it illegal for *him* "to even have the gun." The circuit court concluded that "[a]ll of those circumstances together" established Pipkin's knowledge that the firearm was stolen. Pipkin now appeals.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"[A]ny person who buys or receives a firearm from another person . . . , knowing that the firearm was stolen," is "guilty of a Class 6 felony." Code § 18.2-108.1. "The elements of the offense are that (1) the firearm was 'previously stolen by another,' (2) it was received by the

appellant, and that the appellant acted (3) 'with knowledge of the theft' and (4) with 'a dishonest intent.'" *Williams v. Commonwealth*, 71 Va. App. 462, 484 (2020) (quoting *Shaver v. Commonwealth*, 30 Va. App. 789, 800 (1999)). On appeal, Pipkin alleges that the Commonwealth failed to prove the knowledge element of the offense.

We have held that "[g]uilty knowledge 'is sufficiently shown if the circumstances proven are such as must have made or caused the recipient of stolen goods to believe they were stolen.'" *Shaver*, 30 Va. App. at 800-01 (quoting *Reaves v. Commonwealth*, 192 Va. 443, 451 (1951)). "Circumstances tending to prove guilty knowledge include the defendant's acts, statements, and conduct." *Hawkins v. Commonwealth*, 288 Va. 482, 486 (2014) (quoting *Young v. Commonwealth*, 275 Va. 587, 591 (2008)).

The Commonwealth often must prove "the element of guilty knowledge" with circumstantial evidence. *Williams*, 71 Va. App. at 484. "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Sarka v. Commonwealth*, 73 Va. App. 56, 67 (2021) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "And the hypotheses which must be reasonably excluded are those which flow from the evidence itself, and not from the imagination of defendant's counsel." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting *Turner v. Commonwealth*, 218 Va. 141, 148 (1977)). Importantly, "circumstantial evidence is not viewed in isolation." *Holloway v. Commonwealth*, 57 Va. App. 658, 665 (2011) (en banc) (quoting *Hudson*, 265 Va. at 514). Indeed, "[w]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Pijor*, 294 Va. at 512-13 (second alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

We conclude that a reasonable factfinder, viewing the totality of the evidence in the light most favorable to the Commonwealth, could conclude that Pipkin knew or believed that the firearm he purchased from Turner was stolen. Turner testified that Pipkin told him that it was illegal for Turner to possess the firearm and that it was possibly stolen. The circuit court, as the factfinder, was entitled to credit this testimony. Pipkin argues the Commonwealth did not establish *how* Pipkin knew that the firearm was stolen. But the factfinder was entitled to take Pipkin's statements at face value. Importantly, a trier of fact that credited Turner's testimony could find that Pipkin repeatedly commented on the firearm's illicit character as part of a pitch to convince Turner to sell it to him. Such a finding strengthens the conclusion that Pipkin in fact believed the firearm was stolen, regardless of what caused that belief.

Additionally, the factfinder could consider Pipkin's statement that he "could hide it and get away with it" as evidence that Pipkin knew or believed the firearm was stolen. *See Hawkins*, 288 Va. at 486. Pipkin also told Turner that it was illegal for Turner to possess the firearm because he was not 21 years old. A factfinder could conclude that Pipkin's belief that Turner's possession of the firearm was unlawful strengthened the inference that Pipkin knew or believed that it was stolen.

In sum, the "combined force" of the Commonwealth's evidence was sufficient to allow a rational factfinder to conclude beyond a reasonable doubt that Pipkin knew the firearm was stolen when he purchased it from Turner in January 2022. *See Pijor*, 294 Va. at 512-13. Accordingly, the circuit court's verdict was supported by the evidence, and we do not disturb it.

CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*